UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JLT SPECIALTY LIMITED, MARSH LIMITED, AND MARSH SERVICES LIMITED, <br><br> Applicants, <br><br> IN RE EX PARTE APPLICATION OF JLT SPECIALTY LIMITED, MARSH LIMITED, AND MARSH SERVICES LIMITED FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Misc. Case No. 1:20-mc-254 |

# MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY UNDER 28 U.S.C. § 1782

Peter R. Chaffetz
Andrew L. Poplinger

CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax (212) 257-6950

*Attorneys for JLT Specialty Limited, Marsh Limited, and Marsh Services Limited*

**TABLE OF CONTENTS**

Page

I. Preliminary Statement ...................................................................................................1

II. Factual Background .......................................................................................................1

    A. Relevant Parties .................................................................................................2

    B. The Dispute Before the English High Court .....................................................3

    C. Relief Sought Through this Application ............................................................5

III. Argument ........................................................................................................................5

    A. Courts Routinely Grant § 1782 Relief *Ex Parte* ...............................................5

    B. The Application Satisfies the Statutory Requirements of § 1782 ......................6

        1. BGC Partners "Resides" in the Southern District of New York ...............6

        2. Applicants Seek Discovery for Use in Foreign Proceedings ....................7

        3. The Application is Made by an "Interested Person" .................................7

    C. The *Intel* Discretionary Factors Favor Granting this Application .....................8

        1. BGC Partners is Outside the Jurisdiction of the English Court ................8

        2. The English Court is Receptive to this Court's Assistance ......................9

        3. The Application is Not an Attempt to Circumvent Proof-Gathering Limitations Under English Law ...............................................................10

        4. The Discovery Sought is Not Unduly Intrusive or Burdensome .............10

IV. Conclusion ....................................................................................................................11

I.     **Preliminary Statement**

By this application, JLT Specialty Limited, Marsh Limited, and Marsh Services Limited ("Applicants"), seek an *ex parte* order pursuant to 28 U.S.C. § 1782 authorizing them to take discovery from Respondent BGC Partners, Inc. ("BGC Partners"). Applicants will use this discovery in aid of an ongoing judicial proceeding in the English High Court, Queen's Bench Division. In that proceeding, Applicants have sued to recover damages suffered as the result of an unlawful conspiracy implemented by defendants David Gordon and Ed Broking LLP (an insurance brokerage business) to poach brokers, other staff and clients from Applicants' highly specialized fine art, jewelry and specie ("FAJS") insurance brokerage business. Mr. Gordon is a former executive of Applicants' brokerage operations who recently moved to Ed Broking. Ed Broking is a subsidiary of and is controlled by Respondent BGC Partners.

This is a prototypical case for § 1782 discovery. The Respondent BGC Partners, through its close relationship and control over Ed Broking and involvement in Mr. Gordon's recruitment, most certainly possess evidence that is highly relevant to the English Court's resolution of Applicants' claims. The disclosure of that information will enhance the English Court's understanding of the underlying facts and help it adjudicate Applicants' claims. However, BGC Partners is not a party to the English action or otherwise subject to discovery in England. Accordingly, this is the classic circumstance in which Congress intended § 1782 discovery to assist foreign courts. As set forth fully herein, this Application meets the statutory requirements of § 1782, and all relevant discretionary factors weigh strongly in favor of an order granting this Application.

II.    **Factual Background**

The relevant facts are set forth in the accompanying declarations of Christopher Anthony Bushell ("Bushell Decl.") and Peter R. Chaffetz ("Chaffetz Decl.") and the exhibits thereto. On

1

March 18, 2020, Applicants initiated proceedings before the English High Court of Justice, Queen's Bench Division, captioned *JLT Specialty Ltd. et al. v. David Gordon et al.,* QB-2020-001110 (the "English Proceeding"). Bushell Decl., Ex. A. The English Proceeding concerns Applicants' claims arising from the unlawful poaching of an entire team of insurance brokers and clients in the specialized FAJS area. *Id*. We set forth here the basic facts related to Applicants' claims in the English Proceeding, and the close relationship between BGC Partners and the defendants before the English High Court. These facts establish the need for the discovery Applicants seek.

      A.      **Relevant Parties**

**Applicants.** Applicants are part of the Marsh and McLennan group of companies. Applicants JLT Specialty Limited and Marsh Limited are leading specialty insurance brokers. Bushell Dec., ¶ 10. Applicant Marsh Services Limited is a service company that employs individuals who work in the business of the JLT Specialty Limited and Marsh Limited (and other group companies). *Id*. The FAJS market is one of the sectors in which Applicants provide brokerage services. *Id*.

**Ed Broking LLP.** Ed Broking is an insurance broker operating in the United Kingdom in competition with Applicants. *Id*., ¶ 11. Shortly after being acquired by a subsidiary of BGC Partners in January of 2019, Ed Broking hired away a team of brokers and other staff who were part of Applicants' FAJS business. *Id*., ¶ 13. Ed Broking is a defendant in the English Proceeding. *Id*., ¶ 2.

**David Gordon.** David Gordon is the former Chief Executive Officer of Applicants' FAJS team in the United Kingdom. *Id*., ¶ 12. In or about September/October 2019, Ed Broking recruited Mr. Gordon to serve as Chief Executive Officer of the new FAJS division which Ed Broking was setting up. Mr. Gordon is also a defendant in the English Proceeding. *Id*.

**BGC Partners, Inc.** BGC Partners is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York. Chaffetz Decl., ¶ 6. Based on information available to Applicants, BGC Partners, as a controlling parent entity of Ed Broking, was instrumental in Ed Broking's plans to expand into the FAJS market, and BGC Partners's executives and senior management provided assistance to Ed Broking in devising its scheme to poach Applicants' employees and clients as part of BGC Partners's overall organizational growth strategy. Bushell Dec., ¶ 14.

### B. The Dispute Before the English High Court

Applicants' claims in the English Proceeding arise out of Applicants' former FAJS executive David Gordon's surreptitious and unlawful recruitment of an entire team of employees to move *en masse* from Applicants to Ed Broking to establish the latter's FAJS business. Bushell Decl., ¶ 5.

Together, Mr. Gordon and Ed Broking assisted each other to set up the new FAJS division by recruiting further employees from Applicants' FAJS team for whom Mr. Gordon was responsible and in respect of which Mr. Gordon owed Applicants duties of loyalty. *Id.*, ¶ 13. Following the approval of the new FAJS division by BGC Partners, between January 15 and February 28, 2020, Mr. Gordon and Ed Broking coordinated the resignation of 20 employees from Applicants (the "Departing Employees"). *Id*. The Departing Employees left to join Ed Broking and form a new team again under the leadership of Mr. Gordon. *Id*.

Applicants aver in the English Proceeding that Mr. Gordon's and Ed Broking's conspiracy to poach the Departing Employees and clients was unlawful because their actions (amongst other things): (i) entailed the breach of contractual and/or fiduciary duties owed to Applicants by Mr. Gordon and other Departing Employees who acted as "recruiting sergeants;" and (ii) those breaches of contract were induced by one or both of the defendants. *Id.*, ¶ 5. Applicants seek

3

monetary damages and equitable relief in the English Proceeding. *Id*.

Given its close relationship with Ed Broking and known involvement in the recruitment of Mr. Gordon, BGC Partners is extremely likely to have relevant information that will aid the English Court in resolving Applicants' claims. Bushell Decl., ¶ 19.

At the time Ed Broking was acquired by BGC Partners in January of 2019, Ed Broking had no substantial FAJS team of its own. *Id*., ¶ 14. BGC Partners, through its agents and managers, assisted, fostered and encouraged Ed Broking to recruit Mr. Gordon and encouraged Mr. Gordon to assist Ed Broking to poach Applicants' employees and clients as a means of establishing a FAJS team at Ed Broking. *Id*.

As part of Ed Broking's efforts to recruit Mr. Gordon, executives from BGC Partners met with him on several occasions. *Id*., ¶ 16. This included meetings with Steve Hearn, the CEO of BGC Partners's insurance division (the BGC Insurance Group) and Andrew Wallin, the Chief Commercial Officer of the BGC Insurance Group. *Id*. During the course of those discussions, BGC Partners told Mr. Gordon that he was to "come in and set up a new operation." *Id*.

In the English Proceeding, Ed Broking has admitted that BGC Partners "supported" its wish to expand its insurance brokerage business and BGC Partners gave "approval" to Ed Broking to establish a FAJS division. *Id*., ¶ 15. Further, Ed Broking admits that, from about September or October 2019, Ed Broking and BGC Partners discussed setting up the new FAJS operation and team, for which Mr. Gordon became CEO. *Id*.

Applicants have additional reason to believe that BGC Partners was instrumental in Mr. Gordon's and Ed Broking's scheme to poach Applicants' FAJS team and clients. First, BGC Partners was involved in Ed Broking's decision to expand into the FAJS sector, and, as a shareholder, it stands to benefit if Ed Broking's entry into the FAJS sector succeeds. *Id*., ¶¶ 11,

14-15. Second, BGC Partners's management was in direct contact with Mr. Gordon in connection with his move to Ed Broking. *Id.*, ¶ 16. Finally, as explained in greater detail in the Bushell Decl., the English Courts have previously found that BGC Partners (through another UK subsidiary, BGC Brokers LLP), has engaged in similar unlawful recruitment schemes to build and expand its broking business by poaching their competitors' employee teams and clients. *Id.*, ¶ 17.

        **C.**     **Relief Sought Through this Application**

Applicants seek an order permitting them to serve BGC Partners with the proposed subpoena attached as Exhibit A to the Chaffetz Decl. As set forth therein, Applicants seek a narrowly-defined class of documents related to the Respondent's involvement in the events giving rise to the English Proceeding, including its involvement in Ed Broking's decision to enter into the FAJS market and its efforts to encourage and assist Ed Broking's and Mr. Gordon's unlawful recruitment and poaching of Applicants' employees. Applicants also seek the deposition testimony of a corporate representative covering a similarly narrow set of topics concerning BGC Partners's involvement in the events that precipitated Ed Broking's poaching of Applicants' employees and clients.

**III.**     **Argument**

        **A.**     **Courts Routinely Grant § 1782 Relief *Ex Parte***

It is well-settled that courts may grant § 1782 relief *ex parte*. Indeed, the Second Circuit has recognized that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated, because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012). Accordingly, courts in this District have recognized their authority to grant applications for discovery in aid of foreign proceedings under § 1782 on an *ex-parte* basis. *See, e.g., In re Hornbeam Corp.*, No.

5

14MISC424PART1, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015), aff'd, 722 F. App'x 7 (2d Cir. 2018), and aff'd, 722 F. App'x 7 (2d Cir. 2018); *see also* Comm. on Int'l Commercial Disputes, N.Y.C. Bar Ass'n, 28 U.S.C. § 1782 as a Means of Obtaining Discovery in Aid of International Commercial Arbitration—Applicability and Best Practices 15, http://www.nycbar.org/pdf/report/1782_Report.pdf. ("Section 1782 applications may be made on an ex parte basis by a party (or nonparty) directly to a district court, without the need to notify in advance the party from whom discovery is sought or the adverse party in the foreign proceeding.")

### B.     The Application Satisfies the Statutory Requirements of § 1782

Section 1782 imposes three mandatory requirements for a discovery subpoena:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made;
>
> (2) the discovery must be for use in a proceeding before a foreign tribunal; and
>
> (3) the application must be made by a foreign or international tribunal or any interested person.

*See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).  This Application easily satisfies each of these requirements.

#### 1.     BGC Partners "Resides" in the Southern District of New York

BGC Partners "resides" in the in the Southern District of New York, as required by § 1782. A corporation "resides or is found" in the district where it maintains its principal place of business. *See In re Application of Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018) (finding corporation with principal place of business in district satisfied "resides or is found" requirement under § 1782).  BGC Partners is a Delaware corporation that maintains its principal place of business in the Southern District of New York.  Chaffetz Decl., Ex. B.  Its executive offices are located at 499 Park Avenue in Manhattan.  *Id.*  Thus, BGC Partners resides in this District within the meaning of § 1782.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924

(2011) (ruling that a corporate entity "resides" in places where it has continuous and systematic contacts, prime examples of which are the place of incorporation and the principal place of business).

### 2.  Applicants Seek Discovery for Use in Foreign Proceedings

Applicants also satisfy the second requirement that the discovery sought be "for use" in the foreign proceeding. The Second Circuit has explained that the "for use in a proceeding in a foreign or international tribunal" factor turns on: (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). The "for use" requirement is satisfied by showing that the applicant will use the materials sought at some stage of a foreign proceeding "to increase her chance of success" in the foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 298-99 (2d Cir. 2015) ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding — not necessarily something without which the applicant could not prevail.")

The English Proceeding is currently pending before the High Court. Bushell Decl. ¶ 2. Applicants' intend to use the discovery obtained from BGC Partners in the English Proceeding to prove the origin and scope of the conspiracy by its affiliates Ed Broking and Mr. Gordon, the two defendants in the English Proceeding, to poach Applicants' employees and clients. *Id.,* ¶ 3. Thus, the second mandatory requirement is satisfied.

### 3.  The Application is Made by an "Interested Person"

Applicants are the claimants in the English Proceeding, and therefore the paradigmatic "interested persons" within the meaning of § 1782. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782.")

C.     **The *Intel* Discretionary Factors Favor Granting this Application**

When an application under § 1782 meets the statutory requirements, the reviewing court should then "consider whether the purposes of § 1782 are best served by approving [the] application." *In re Application of 000 Promneftstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (citations and quotations omitted). The "twin aims" of the statute are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel*, 542 U.S. at 252.

The United States Supreme Court has identified four factors to guide a court's determination:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent § 1782 aid;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance;
>
> (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Intel Corp.*, 542 U.S. at 264-65. BGC Partners has material information that is highly relevant to the English Court's adjudication of Applicants' claims, which it cannot be compelled to produce in that proceeding due to limitations on the English Court's jurisdiction. Not surprisingly, all of these factors weigh strongly in favor of granting § 1782.

1.     **BGC Partners is Outside the Jurisdiction of the English Court**

If the person from whom discovery is sought is not a party to the foreign action, and not subject to compulsory process in the foreign court, this first factor weighs in favor of granting the application. *Intel Corp.*, 542 U.S. at 264.

Here, BGC Partners is neither party to the English Proceeding nor otherwise subject to the

8

English Court's jurisdiction to compel discovery. Bushell Decl., ¶ 18. Thus, this factor weighs in favor of granting this Application. *See Intel Corp.*, 542 U.S. at 244.

### 2. The English Court is Receptive to this Court's Assistance

The inquiry under the second factor is whether the foreign court is more likely to accept or reject evidence obtained through § 1782. There is a strong presumption in favor of the foreign court's receptivity, and the Court should only find the foreign court unreceptive to assistance if there is "authoritative proof" that the foreign court "would reject evidence obtained with the aid of [§] 1782." *Euromepa*, 51 F.3d at 1099-101.

Here there is no reason at all to think that the English High Court would reject evidence obtained with the aid of § 1782. To the contrary, the English courts are receptive to § 1782 assistance from U.S. federal courts and will admit evidence obtained with the aid of § 1782. *See, e.g., Teva Pharma B.V. v Amgen, Inc* [2013] EWHC 3711 (Pat) ("Furthermore, there are other potential ways for Teva to obtain disclosure from AI even if AI ceases to remain a party. Even if no order could be made under CPR Rule 31.17 because AI is outside the jurisdiction (as to which I express no view), Teva could make an application in the USA under 28 USC § 1782."); *Nokia Corp v InterDigital Technology Corp* [2004] EWHC 2920 (Pat) ("[T]he English court should not, subject to the caveat [regarding actions contrary to law], concern itself with the manner in which the material sought to be admitted is obtained."). Indeed, in *Intel*, the Supreme Court cited the case of *South Carolina Insurance Co. v Assurantie Maatschappis "De Zeven Provincien" N.V.*, [1987] 1 AC 24, in which the House of Lords ruled that non-discoverability under English law did not prevent litigants in an English court from seeking discovery in the United States pursuant to § 1782. *Intel*, 542 U.S. at 262. And this Court has accordingly granted § 1782 relief on the understanding that English courts would not reject such assistance. *See, e.g., In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) ("Nor is there any reason

9

to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782.").

This factor therefore clearly weighs in favor of granting this Application.

### 3. The Application is Not an Attempt to Circumvent Proof-Gathering Limitations Under English Law

This factor focuses on whether the foreign court imposes a substantive prohibition against seeking the evidence at issue, but it does not require that the discovery sought would be available in the foreign proceeding. *Intel*, 542 U.S. at 261 (finding §1782's text does not impose "a generally applicable foreign-discoverability rule"); *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) ("Section 1782 contains no foreign-discoverability requirement.").

As noted above, English courts are generally receptive to assistance from U.S. Courts under § 1782, and there is no barrier under English law to taking or using the document and deposition discovery Applicants seek here. Bushell Decl., ¶ 20.

Accordingly, this factor also weighs in favor of granting this Application.

### 4. The Discovery Sought is Not Unduly Intrusive or Burdensome

Finally, the fourth Intel factor also weighs in favor of granting the Application because the discovery Applicants seek is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The ordinary standards under the Federal Rules of Civil Procedure determine the proper scope of § 1782 discovery. 28 U.S.C § 1782 ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."). In assessing this factor, "the court is guided by Rules 26 and 45, which govern third-party discovery." *In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011). Under Rule 26(b)(l), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case." To determine whether such discovery nevertheless imposes an "undue burden," courts take into consideration factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *See In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011).

As demonstrated by the proposed subpoena submitted with this Application (Chaffetz Decl., Ex. A), Applicants' proposed discovery requests are narrowly-tailored to specific issues in the English Proceeding, namely BGC Partners's involvement in Ed Broking's strategy in creating a FAJS team and its recruitment of David Gordon and the other 20 Departing Employees. These events occurred during a discrete six-month period between September 2019 and February 2020. *See* Bushell Decl., ¶¶ 12-13. Applicants have tailored each of the requests to discover evidence of BGC Partners's participation in and knowledge of facts related to these events, which precipitated the English Proceeding. Chaffetz Decl., Ex. A. Similarly, the deposition of BGC Partners's corporate representative will likewise be limited to the same narrowly-tailored subject matter covering the events during the same discrete timeframe. *Id.*; *In re Application of 000 Promineftstroy*, 134 F. Supp. 3d at 793 (single deposition covering discrete, identified events not unduly burdensome).

Accordingly, this factor weighs in favor of granting this Application.

### IV. Conclusion

For the reasons stated above, Applicants respectfully request that this Court grant their application for discovery in aid of foreign proceedings under 28 U.S.C. § 1782 and issue an *ex parte* order authorizing Applicants to serve the proposed subpoena for documents and testimony upon Respondent BGC Partners.

Dated: New York, New York
July 17, 2020

        Respectfully Submitted,

        <u>s/ Peter R. Chaffetz</u>
        Peter R. Chaffetz
        Andrew L. Poplinger

        C H A F F E T Z  L I N D S E Y  L L P
        1700 Broadway, 33rd Floor
        New York, NY 10019
        Tel. (212) 257-6960
        Fax (212) 257-6950
        peter.chaffetz@chaffetzlindsey.com

        *Attorneys for JLT Specialty Limited, Marsh Limited, and Marsh Services Limited*